NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0263n.06

No. 12-3206

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Mar 14, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DOUGLAS ANTHONY DALE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE:  KEITH, MARTIN, and COLE, Circuit Judges.

PER CURIAM.  Douglas Anthony Dale, who is represented by counsel, appeals the district court's denial of his motion to vacate his sentence, filed under 28 U.S.C. § 2255.  For the reasons set forth below, we affirm.

On October 4, 2005, shortly before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 23 took effect, Dale filed for bankruptcy and received a discharge in the amount of $112,720.29.  Dale was subsequently indicted for bankruptcy fraud and proceeded to trial.  After three days of testimony, a jury found Dale guilty of the following seven counts contained in the superseding indictment:  filing a bankruptcy petition for the purpose of executing or concealing a scheme to defraud the payment of child support to his child's mother, in violation of 18 U.S.C. § 157(1) (Count 1); two counts of making false statements in relation to

his bankruptcy case by failing to disclose his interest in Canton Realty and Development Distribution, Inc. (Canton Realty), in violation of 18 U.S.C. § 152(3) (Counts 2 and 4); making false statements in relation to his bankruptcy case by failing to disclose a judgment owed to him, in violation of 18 U.S.C. § 152(3) (Count 3); making false statements in relation to his bankruptcy case by failing to disclose the child support proceeding, in violation of 18 U.S.C. § 152(3) (Count 5); making a false oath at a meeting of creditors in his bankruptcy case by making false statements relating to his address, his interest in Canton Realty, and the judgment owed to him, in violation of 18 U.S.C. § 152(2) (Count 7); and concealing from creditors and bankruptcy trustees his interest in Canton Realty, in violation of 18 U.S.C. § 152(1) (Count 8). Following the jury's verdict, Dale renewed his motion for judgment of acquittal. The district court granted the motion with respect to Count 1, finding that there was insufficient evidence that Dale filed the bankruptcy petition for the purpose of executing or concealing a scheme to defraud his child's mother. The district court denied Dale's motion as to the other counts and sentenced him to twenty-one months of imprisonment, followed by three years of supervised release.

On direct appeal, Dale asserted that his trial counsel's failure to move for a new trial after the district court granted his motion for judgment of acquittal as to Count 1 violated his Sixth Amendment right to counsel. Concluding that Dale's ineffective assistance of counsel claim would be better addressed in a post-conviction proceeding under 28 U.S.C. § 2255, we affirmed his convictions without prejudice to raising his claim in a section 2255 motion to vacate. *United States v. Dale*, 429 F. App'x 576, 579 (6th Cir. 2011).

Dale then filed a pro se section 2255 motion to vacate, reasserting his ineffective assistance of counsel claim. The district court denied the motion, concluding that Dale established neither compelling prejudice resulting from the retroactive misjoinder of Count 1, nor bad faith on the part of the prosecution in bringing Count 1. The court did grant Dale a certificate of appealability.

"[W]e review the district court's legal conclusions *de novo* and its factual findings for clear error." *Dawson v. United States*, 702 F.3d 347, 349 (6th Cir. 2012). To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).

The government contends that Dale's trial counsel was not ineffective for failing to move for a new trial because a new trial motion would have been untimely under Federal Rule of Criminal Procedure 33(b) when the district court granted the judgment of acquittal as to Count 1. However, Dale's trial counsel could have moved for a new trial at the same time he moved for a judgment of acquittal. *See United States v. Boesen*, 599 F.3d 874, 878 (8th Cir. 2010) (citing Fed. R. Crim. P. 29(d)(1)).

For the purposes of this appeal, we assume, as the district court did, that trial counsel's failure to move for a new trial constituted deficient performance. Dale contends that trial counsel's failure to move for a new trial prejudiced his defense, asserting that retroactive misjoinder resulted in prejudicial spillover of evidence admitted in support of Count 1. "Retroactive misjoinder refers to circumstances in which the joinder of multiple counts was proper initially, but later developments — such as a district court's dismissal of some counts for lack of evidence or an appellate court's

reversal of less than all convictions — render the initial joinder improper." *United States v. Jones*, 482 F.3d 60, 78 (2d Cir. 2006) (internal quotation marks and brackets omitted); *see also United States v. Daniels*, 653 F.3d 399, 414 (6th Cir. 2011) (quoting *Jones*), *cert. denied*, 132 S. Ct. 1069 (2012). "To succeed on a retroactive misjoinder claim, in which a defendant alleges that the prejudicial 'spillover' of otherwise inadmissible evidence influenced the jury's decision on the remaining counts, the defendant must show either 'compelling prejudice' or that the prosecutor acted in 'bad faith' in bringing the charge." *Daniels*, 653 F.3d at 414. Dale does not assert bad faith, claiming only prejudice, which is a "very heavy" burden. *United States v. Deitz*, 577 F.3d 672, 693 (6th Cir. 2009) (citation omitted). In Dale's direct appeal, we recognized that courts consider the following factors in determining whether a defendant claiming retroactive misjoinder suffered prejudice: "whether spillover evidence would incite or arouse the jury to convict on the remaining counts, whether the evidence was intertwined, the similarities and differences between the evidence, the strength of the government's case, and the ability of the jury to separate the evidence." *Dale*, 429 F. App'x at 579.

Dale concedes that the majority of the evidence presented at trial would still be admissible without Count 1, which charged him with filing the bankruptcy petition for the purpose of executing or concealing a scheme to defraud the payment of child support to his child's mother. Evidence regarding Dale's child support obligations was relevant to Count 5, which charged him with making false statements in relation to his bankruptcy case by failing to disclose the child support proceeding. In addition, evidence regarding Dale's payment of a child support arrearage settlement using funds

from Canton Realty was relevant to the other counts charging him with failing to disclose his interest in Canton Realty.

Dale contends that trial testimony "gave the impression that [he] was a deadbeat dad who faked a disability to avoid paying . . . support to his child." No witness referred to Dale as a "deadbeat dad." In fact, Kim Hopwood, a staff attorney with the Stark County Child Support Enforcement Agency, testified that Dale had paid all of his court ordered child support payments by the time that his child became emancipated. The only testimony specifically cited by Dale is the testimony of Stephen Harrison, the attorney who represented the mother of Dale's child in the child support proceeding. During his examination by the government, Harrison testified about a newspaper photo of Dale: "one of the exhibits that we used at trial was a photograph that if I recall correctly depicted Mr. Dale operating a post hole [digger] at a [H]abitat for [H]umanity project, at a time period when he was apparently unable to work." Harrison did not use the word "faker" on direct examination. The word was used by Dale's trial counsel on Harrison's cross-examination:

> Q. And you also were convinced Mr. Dale was somehow a faker, and he had the ability to work?
>
> A. That we did suspect.
>
> . . . .
>
> Q. Well, you had four years to pursue and prove that Mr. Dale was a faker, right, at least?
>
> A. We didn't – that wasn't the objective after the November, 1999 hearing to prove he was a faker. We got an order in November of 1999, and my client was satisfied with the order at that point.

Harrison's responses were not inflammatory. His testimony would not "have tended to incite or arouse the jury into convicting the defendant on the remaining counts." *Daniels*, 653 F.3d at 415 (internal quotation marks omitted).

Dale also argues that the government presented the evidence as being intertwined, citing the government's opening statement. The district court instructed the jury, both before the parties' opening statements and in its final instructions, that opening statements are not evidence. *See United States v. Burns*, 298 F.3d 523, 543 (6th Cir. 2002). The district court also instructed the jury to separately consider the evidence for each count. We presume that the jury followed the district court's instructions, *see United States v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995), and there is no indication that the jury did not do so in this case.

Finally, the evidence on the remaining counts against Dale was overwhelming. Four of those counts involved Dale's failure to disclose his interest in Canton Realty. As the district court noted, the government presented "a wealth of evidence" regarding Dale's involvement in Canton Realty.

We agree with the district court that Dale failed to meet the heavy burden of demonstrating "compelling prejudice" from the spillover of otherwise inadmissible evidence supporting Count 1. Therefore, Dale has failed to demonstrate prejudice from his trial counsel's failure to file a motion for a new trial. The district court's judgment is affirmed.