NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0162n.06

Case No. 21-5900

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE WESTERN DISTRICT OF |
| JOHN SANDERSON, | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
|  | ) | |

FILED

Apr 18, 2022
DEBORAH S. HUNT, Clerk

Before: SUTTON, Chief Judge; WHITE and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. John Sanderson took up-close pictures of an infant girl's genitalia. He then stored them in a secure folder on his phone alongside dozens of child-pornography videos. Now, he raises several challenges to his convictions and sentence. We affirm.

I.

In July 2019, John Sanderson was staying with his friend, Carrie Daniels. On the night of July 28, Daniels borrowed Sanderson's cellphone. She wanted to update her profile picture on Facebook. So she opened the phone's photo gallery. There, she saw two images that "disgusted" her: (1) a little girl's "bottom area" with Sanderson's thumb and forefinger "separating her" labia; and (2) a naked man with a naked "little child." R. 108, Pg. ID 386–88.

The next day, Daniels and her boyfriend confronted Sanderson. Sanderson got "mad" and "irritated." *Id.* at 390. He denied knowing about the pictures and even accused Daniels of putting them in his phone. Eventually, Sanderson took his phone and left the house. Worried that

Sanderson would delete the pictures, Daniels' boyfriend chased him down, hit him, grabbed the phone, and gave it back to Daniels.

Using a neighbor's phone, Sanderson called the police and reported the incident. He told the responding officer that Daniels had borrowed his phone and "saw something that she didn't like." *Id.* at 331. Although he didn't describe the pictures, Sanderson did state that he "didn't know how [they] got there." *Id.* at 341. And he explained how Daniels' boyfriend had "punched" him and taken his phone. *Id.* at 331. After listening to this story, the officer went and spoke with Daniels (her boyfriend had left). She showed him the pictures on the phone, and he contacted an investigator. The officer then returned Sanderson's phone to him and volunteered to take him to the police station so he could give a written statement and speak with the investigator.

At the police station, Sanderson told the investigator that four "vagina pictures" of a "small young girl" were found on his phone. *Id.* at 357. But he claimed that he was unaware the pictures were on his phone and denied knowing the girl's identity. In fact, Sanderson said he "would have already reported it" if he had known. *Id.* He also showed the investigator the phone's password and consented to a forensic examination of the phone.

From there, the investigator turned the phone over to an officer with the FBI's Child Exploitation Task Force. He performed a "basic examination" of the phone that revealed three pictures of a "very young female" laying on a green and tan rug with her "legs . . . spread" to display her genital area. *Id.* at 410, 413. To discover the girl's identity, the officer showed redacted versions of the pictures to Sanderson's relatives. Sanderson's cousin Kailey identified the girl as her daughter, A.L. Kailey confirmed that Sanderson had stayed at her home from March through early May 2019—when A.L. was not even two years old, couldn't speak in sentences, and was still wearing diapers.

Sanderson was arrested on August 29 and later charged with producing and possessing child pornography. He agreed to speak with an investigator once again. This time, Sanderson admitted that he took the pictures and confirmed that the girl was A.L. But he claimed that he took the pictures because A.L. was "having some pain when using the bathroom" and her genital area was red. *Id.* at 421. He also said he took the pictures to share with Kailey and that Kailey knew about the pictures. Kailey, however, testified that A.L. was not having any difficulty urinating and did not have a rash or redness in her genital area. She also stated that Sanderson never said A.L. was having trouble urinating, shared the pictures with her, or told her about them.

Sometime later, Sanderson's phone was examined a second time using more advanced technology. The forensic examiner found a "double password protected, hidden, and encrypted" folder called "My Privates" on the phone. *Id.* at 464–65. That folder contained dozens of child-pornography videos that had been downloaded from the internet. And it also contained the picture of Sanderson's "fingers spreading [A.L.'s] vagina for the camera." *Id.* at 493. The metadata for that photo showed that it was created on April 30, 2019. Moreover, the forensic examiner found another folder titled "PicsArt," which contained an edited version of the picture of A.L. that deleted identifying features (like Sanderson's hand).

The jury convicted Sanderson for the production and possession of child pornography. *See* 18 U.S.C. § 2251(a), (e); *id.* § 2252(a)(4)(B), (b)(2). His advisory Guidelines sentence was life, subject to a statutory maximum of 600 months. The district court sentenced him to a below-Guidelines term of 480 months' imprisonment. He appealed.

II.

On appeal, Sanderson raises three main issues. First, he argues that his convictions are not supported by sufficient evidence. Second, he challenges his sentence as procedurally

unreasonable. And third, he contends that the district court imposed a substantively unreasonable sentence. We address each in turn.

A.

We begin with Sanderson's sufficiency arguments. We review the sufficiency of the evidence de novo. *See United States v. Napier*, 787 F.3d 333, 344 (6th Cir. 2015). "A defendant challenging the sufficiency of the evidence bears a very heavy burden." *United States v. Warshak*, 631 F.3d 266, 308 (6th Cir. 2010) (citation omitted). We must uphold Sanderson's convictions if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The government may carry its burden with "circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995).

*Production.* A defendant is guilty of producing child pornography if, among other things, he "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). Sanderson challenges this conviction on two grounds. First, he says that the pictures don't depict "sexually explicit conduct." Appellant's Br. 34. And second, he asserts that he didn't take the pictures "for the purpose of producing a visual depiction of sexually explicit conduct." *Id.*

Start with Sanderson's first contention. Congress has defined "sexually explicit conduct" to include the "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). We consider six factors to decide whether a depiction is "lascivious." *See United States v. Daniels*, 653 F.3d 399, 407 (6th Cir. 2011). Those factors ask whether: (1) "the focal

point of the visual depiction is on the child's genitalia or pubic area"; (2) "the setting of the visual depiction is sexually suggestive"; (3) "the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child"; (4) "the child is fully or partially clothed, or nude"; (5) "the visual depiction suggests sexual coyness or a willingness to engage in sexual activity"; and (6) "the visual depiction is intended or designed to elicit a sexual response in the viewer." *Id.* This list is "not exhaustive, and an image need not satisfy every factor to be deemed lascivious." *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009) (citation omitted).

A rational factfinder could find that the pictures Sanderson produced are lascivious and therefore depict sexually explicit conduct. The pictures show a nude child laying on her back in an unnatural pose—in one, Sanderson's hand is holding her legs apart; in another, he's using his fingers to spread her labia for an up-close picture. The focal point of each picture is the child's genitals. *See, e.g.*, *United States v. Nichols*, 527 F. App'x 344, 347 (6th Cir. 2013). And based on these facts, we have no doubt that a rational factfinder could also conclude the pictures were "designed to elicit a sexual response in the viewer." *Daniels*, 653 F.3d at 407; *see also Brown*, 579 F.3d at 681. Taken together, sufficient evidence supports the jury's finding that the pictures depict sexually explicit conduct.

Sufficient evidence also supports the jury's finding that Sanderson's purpose was to produce a visual depiction of sexually explicit conduct. *See* 18 U.S.C. § 2251(a). According to Sanderson, his purpose was innocent—he wanted to "document that there was a rash that the mother needed to know about." Appellant's Br. 34. To bolster this claim, Sanderson points out that he turned the phone over to the police, volunteered to speak with an investigator, admitted that he took the pictures, and even let others borrow his phone.

But taking the facts in the light most favorable to the government, *see Jackson*, 443 U.S. at 319, sufficient evidence supports the jury's finding that Sanderson's purpose was to produce a visual depiction of sexually explicit conduct. At his first interview, Sanderson denied knowing the pictures were on his phone. He even accused Daniels of putting them there. During his second interview, however, Sanderson's story changed. He told the investigator that he took the pictures to document a rash and redness for Kailey because A.L. was having trouble urinating. He also claimed that Kailey knew about the pictures. But Kailey testified that A.L. didn't have any difficulty urinating. Nor did she have a rash or redness in her genital area. What's more, Kailey testified that Sanderson never said A.L. was having trouble urinating, shared the pictures with her, or told her about them.

The second forensic examination of Sanderson's phone also suggests an illicit purpose. Indeed, that examination didn't reveal any searches for terms like "rashes," "diaper rash," or "pain while urinating." R. 108, Pg. ID 497. Instead, it found pictures of A.L. stored in a "double password protected, hidden, and encrypted" folder called "My Privates." *Id.* at 464–65. An edited version of A.L.'s picture—which removed identifying features, like the rug and Sanderson's hand—was also stored there. And so were dozens of child-pornography videos that had been downloaded from the internet. Of course, as Sanderson points out, he consented to that examination and voluntarily spoke with investigators. But given the other evidence presented at trial, the jury could reasonably interpret these acts as an effort to deflect blame. Thus, we conclude that sufficient evidence supports the illicit-purpose element as well.

*Possession*. Sanderson also disputes his conviction for possession of child pornography. To secure a conviction on this charge, the government needed to prove that, among other things, the defendant "knowingly possesse[d]" a visual depiction of a "minor engaging in sexually explicit

conduct." 18 U.S.C. § 2252(a)(4)(B). As we discussed above, the evidence establishes that Sanderson produced visual depictions of A.L. engaged in sexually explicit conduct. The evidence also establishes that Sanderson then stored those pictures on his phone, along with child-pornography videos. The phone belonged to Sanderson; indeed, the only two registered users were "J. W. Sanderson" and "Secure Folder." R. 108, Pg. ID 481. That phone was activated on June 3, 2019, and immediately received a message welcoming "John" to Samsung. *Id.* at 475. Right after the phone was activated, its secure folder was created and pictures of A.L. were moved there, where edited versions of them were stored alongside other child pornography. And that same day, the phone uploaded a "selfie of [a man's] naked butt" to a Grindr account associated with Sanderson. *Id.* at 479, 501, 508. When viewed as a whole, this evidence shows that Sanderson created and managed the secure folder. And based on that evidence, a rational factfinder could conclude beyond a reasonable doubt that Sanderson "knowingly possesse[d]" a visual depiction of a "minor engaging in sexually explicit conduct." 18 U.S.C. § 2252(a)(4)(B).

B.

Next, Sanderson contends that his sentence is procedurally unreasonable. Given his convictions, Sanderson's base offense level was 32. *See* U.S.S.G. § 2G2.1(a). The district court then applied five enhancements: (1) a four-level increase because his offense involved a minor under age 12, *see id.* § 2G2.1(b)(1)(A); (2) a two-level increase because the offense involved "the commission of a sexual act or sexual contact," *see id.* § 2G2.1(b)(2)(A); (3) a four-level increase because the offense involved material portraying an infant or toddler, *see id.* § 2G2.1(b)(4)(B); (4) a two-level increase because Sanderson was A.L.'s caregiver at the time of the offense, *see id.* § 2G2.1(b)(5); and (5) a five-level increase because Sanderson was a repeat-and-dangerous sex offender, *see id.* § 4B1.5(b)(1). Those enhancements increased his offense level to 49. But

because the Guidelines cap a defendant's offense level at 43, the district court treated Sanderson's offense level as 43. *See id.* ch. 5, pt. A, cmt. n.2 ("An offense level of more than 43 is to be treated as an offense level of 43."). That offense level produced an advisory Guidelines sentence of life, with a statutory maximum of 600 months. *See* 18 U.S.C. §§ 2251(e), 2252(b)(2).

On appeal, Sanderson challenges three enhancements—the two-level sexual-contact enhancement, the two-level caregiver enhancement, and the five-level repeat-and-dangerous-offender enhancement. We review interpretations of the Guidelines de novo, but the factual findings supporting their application for clear error. *See United States v. Sweeney*, 891 F.3d 232, 237 (6th Cir. 2018). To be procedurally reasonable, the district court must "properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Bailey*, 931 F.3d 558, 562 (6th Cir. 2019) (citation omitted).

Start with the two-level sexual-contact enhancement. The Guidelines instruct district courts to apply a two-level enhancment if the offense involved "the commission of a sexual act or sexual contact." U.S.S.G. § 2G2.1(b)(2)(A). And "sexual contact" includes "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3); *see also* U.S.S.G. § 2G2.1 cmt. n.2. Sanderson concedes that he intentionally touched A.L. But he claims that he didn't do so with the "intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Appellant's Br. 41.

As the district court found, the evidence presented at trial was "overwhelming" that Sanderson took pictures of A.L. for "sexual gratification." R. 110, Pg. ID 659–60. For starters, the evidence discounted Sanderson's claim that he took pictures of A.L.'s genitals to document a rash or redness. Indeed, Sanderson never mentioned a rash or redness or the pictures to A.L.'s mother. Nor did the forensic examination of his phone reveal any attempts to search for "diaper rash," "pain while urinating," or similar words and phrases. R. 108, Pg. ID 497. What's more, that examination uncovered pictures of A.L. stored in a "double password protected, hidden, and encrypted" folder called "My Privates." *Id.* at 464–65. In fact, A.L.'s picture had been edited to remove Sanderson's identifying features. And that picture was stored with dozens of child-pornography videos. Taken together, the district court did not err in concluding that Sanderson intentionally touched A.L.'s genitals "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

Now, the two-level caretaker enhancement. This enhancement applies if the minor was "in the custody, care, or supervisory control of the defendant." U.S.S.G. § 2G2.1(b)(5). The Guidelines explain that this enhancement "is intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently." *Id.* § 2G2.1 cmt. n.5(A). Courts must "look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship." *Id.* For instance, "teachers, day care providers, baby-sitters, or other temporary caregivers are among those who would be subject to this enhancement." *Id.*

The district court determined that, though the relationship was informal, Sanderson "was definitely considered a babysitter from time to time." R. 110, Pg. ID 665. And that finding is supported by the evidence. For about two months in 2019, Sanderson lived with his cousin

Kailey's family—which included Kailey, her father, stepmother, fiancé, and daughter. In her testimony at trial, Kailey indicated that she would sometimes leave A.L. behind at home when, say, she went to the grocery store. When that happened, A.L. wasn't left "in [Sanderson's] care by [himself]"—her father or stepmother would also be there. R. 108, Pg. ID 451. The implication, the district court reasonably found, was that Sanderson would sometimes help watch A.L., even if he wasn't the only one in the house. *See United States v. Carson*, 539 F.3d 611, 612 (7th Cir. 2008) (Easterbrook, J.) (rejecting the notion that "only one person at a time" can have supervisory control over a child). And this conclusion is bolstered by the fact that Sanderson could be alone with A.L., and that he helped take care of other children in homes he stayed in. Although it's a close call, we aren't "left with the definite and firm conviction that a mistake has been committed" in finding that Sanderson had temporary responsibility for A.L. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citation omitted). So the district court did not clearly err, and we affirm this enhancement too.

Because we affirm the two enhancements discussed above, we need not address whether the district court properly applied a five-level enhancement under § 4B1.5(b)(1).[1] After all, Sanderson's offense level was 49 (which the district court had to treat as an offense level of 43). So even assuming the district court incorrectly applied the five-level enhancement here, Sanderson's total offense level would be 44, which is still above the maximum offense level of 43. Either way, then, his Guidelines sentence is life, subject to a statutory maximum of 600 months. *See* U.S.S.G. ch. 5, pt. A; 18 U.S.C. §§ 2251(e), 2252(b)(2). In other words, "even if the district

---

[1] Additionally, because Sanderson did not challenge the district court's elevation of his criminal history category from III to V pursuant to § 4B1.5, below or on appeal, we need not address whether the district court erred in this regard. We note, however, that if a defendant has an offense level of 43, the Guidelines sentence is life no matter the criminal history category. *See United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019).

court erred in applying the enhancement, that error would not have affected [the defendant's] offense level or Guideline range and was therefore harmless." *United States v. Castro*, 960 F.3d 857, 867 (6th Cir. 2020). So we decline to address this argument. *See United States v. Whyte*, 795 F. App'x 353, 366 (6th Cir. 2019) ("[W]e need not discuss this issue . . . because any error resulting from the district court's application of the enhancement was harmless.").

C.

Finally, Sanderson contends that his 480-month, below-Guidelines sentence is substantively unreasonable. We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Cochrane*, 702 F.3d 334, 343 (6th Cir. 2012). In doing so, we ask whether the chosen sentence is "adequate, but not greater than necessary to accomplish the sentencing goals identified by Congress in 18 U.S.C. § 3553(a)." *Id.* at 345 (quotation marks and citation omitted). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor." *Id.* (citation omitted). And when—as here—a district court imposes a below-Guidelines sentence, a defendant challenging it bears an especially "heavy burden." *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013).

Sanderson argues that his sentence is "excessively high." Appellant's Br. 48. Pointing to national sentencing data collected by the Sentencing Commission, Sanderson contends that he received an unusually high sentence. He also asserts that the district court gave too "little weight" to his lack of prior child-exploitation convictions and too much weight to the "charged and uncharged conduct" in his presentence report. *Id.* at 49.

We disagree. The district court listened to the parties' arguments and gave a thorough explanation of the sentence imposed. The court began by explaining the "extremely serious" and

"heartbreaking" nature of the offense. R. 110, Pg. ID 694. And he discussed Sanderson's personal history and characteristics, including that Sanderson "always had the basic necessities," "attended church with his family," and "did not experience any type of abuse or neglect." *Id.* at 695. Although the court acknowledged that Sanderson had no prior child-exploitation convictions, it worried about a "risk of recidivism" given the amount of child pornography found on his phone as well as the technical sophistication Sanderson displayed. *Id.* at 695–97. The court also considered the need to protect the public from Sanderson and others like him—people who exploit "young" and "defenseless" children. *Id.* at 696. Weighing these considerations together, the court found that a below-Guidelines sentence of 480 months was appropriate.

The district court did not abuse its discretion. Sanderson argues that he received an unusually high sentence in light of Sentencing Commission data. But the district court wasn't required to consult the Sentencing Commission's data before imposing a sentence. *See United States v. Hymes*, 19 F.4th 928, 935 (6th Cir. 2021) (explaining that we have never "required a district court to consult the Sentencing Commission's collected data before issuing a sentence"). And although district courts must consider sentence disparities under § 3553(a)(6), the advisory Guidelines range addresses "the statutory purpose of combatting disparity." *Id.* at 937; *see also United States v. Volkman*, 797 F.3d 377, 400 (6th Cir. 2015). So when a district court imposes a within-Guidelines or below-Guidelines sentence, such disparaties are ordinarily accounted for. In any event, this factor is just "one among many," so the district court may rely on other factors to impose a higher sentence. *Hymes*, 19 F.4th at 937. Of course, Sanderson also argues that the district court gave too little weight to his criminal history and too much weight to other considerations. But given the facts here, the district court reasonably concluded that the seriousness of the offense, the risk of recidivism, and the need for general deterrence were entitled

to great weight. *See United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). And to the extent Sanderson argues the district court should have balanced those factors differently, that's "beyond the scope of our appellate review." *Id.* (citation omitted).

\* \* \*

We affirm.