**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0600n.06

No. 11-5693

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 08, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| JOSEPH WOLCOTT, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

**Before:  MOORE, SUTTON, and STRANCH, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Following his conviction for drug trafficking, money laundering, unlawful gambling, and animal fighting, Defendant-Appellant Joseph Wolcott appeals the district court's denial of his motion to suppress evidence discovered as the result of a wiretap.  Wolcott also appeals various aspects of his 276-month sentence, including the application of a mandatory-minimum sentence based on a prior felony drug conviction and a sentencing enhancement for a leadership role in the charged offense.  Finally, Wolcott contends that his sentence was procedurally and substantively unreasonable.  We AFFIRM the denial of the motion to suppress. We also hold that the district court did not err in applying the mandatory-minimum sentence and the leadership-role enhancement and AFFIRM Wolcott's sentence.

**I.  BACKGROUND**

In early 2008, after several years of receiving tips from confidential sources, the federal Drug Enforcement Agency ("DEA"), Tennessee Bureau of Investigation, and Kentucky State Police began investigating a suspected drug-trafficking, money-laundering, illegal-gambling, and cockfighting operation in central Kentucky and middle Tennessee. The investigation focused on three individuals—Wolcott, Jeffery Copas, and Jerry Glass—and their associates.

Because previous informants either were incarcerated or refused to cooperate further, law-enforcement officials began working with an individual identified as CS-12 in an attempt to infiltrate the operation. CS-12 and a fellow informant, CS-11, attended a series of cockfights in Kentucky, where they arranged to purchase marijuana from Bruce Ferguson, a suspected participant in the drug-trafficking operation. The two informants travelled to Ferguson's house for the transaction, which was recorded by CS-12; law-enforcement officials established surveillance at the house during the controlled buy. Ferguson subsequently contacted CS-12 to discuss the possibility of future transactions. CS-12 later met Jeffery Copas, who invited CS-12 to an invitation-only cockfight in eastern Kentucky, which would also be attended by Ferguson, Glass, and Wolcott. At the invitation-only fight, Copas invited CS-12 "to come and stay at [Copas's] residence sometime so that Jeffery Copas could show CS-12 some chickens and different grades/types of marijuana." R.522-2 (DEA Aff.) at 28, ¶ 60 (Page ID# 1649). The affidavit does not state whether CS-12 ever accepted this invitation. Over the next several months, CS-12 had a series of telephone conversations with Ferguson related to the possibility of additional marijuana purchases. During this same period, the government received pen register data from Ferguson's cell phone, which revealed hundreds of calls

2

to and from phone numbers associated with Glass, Copas, and Wolcott. On July 11, 2008, CS-12 participated in a second controlled buy at Ferguson's house.

On July 14, 2008, DEA officials requested authorization to engage in electronic surveillance of Ferguson's cell phone. Pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, the officials submitted an application and accompanying affidavit to the district court explaining why non-wiretap techniques were unlikely to succeed and thus why wiretap authority was necessary. *See* 18 U.S.C. § 2518. Specifically, the affidavit described why continued reliance on the informants would be an inadequate means of meeting the investigation's ultimate objective of discovering and dismantling the full scope of the operation. The informants had been unable to gather information regarding "the identities and roles of the sources of supply for the drugs[,] . . . the distribution of the funds, the location and existence of records, or the resources used to finance the Wolcott Organization's drug business[, and] . . . how the Wolcott Organization moves and launders the proceeds generated from the sale of cocaine and marijuana." R.522-2 at 43, ¶ 92 (Page ID# 1663). In addition, CS-11 and CS-12 had not had the opportunity to meet Glass or Wolcott and had not purchased drugs directly from Copas. Finally, CS-11 refused to testify and was thus of limited utility.

The district court authorized the wiretap of Ferguson's cell phone for 30 days, and subsequently authorized additional wiretaps of cell phones belonging to Wolcott and Kevin

Wolcott.[1]  Based on information gleaned from these wiretaps, the government executed search

warrants at Wolcott's home in Crossville, Tennessee and his farm in Sparta, Tennessee, seizing

drugs, drug paraphernalia, and cash.  The wiretaps also revealed conversations related to a sports-

betting operation and an arrangement between Wolcott and Darrell Tommy Jones in which Jones

would buy used vehicles with Wolcott's money, resell the vehicles, and return the proceeds to

Wolcott.

In December 2008, a federal grand jury indicted Wolcott and twelve others on charges related

to drug trafficking and unlawful gambling.  Superseding indictments added charges for money

laundering and animal fighting.[2]  Prior to trial, Wolcott filed a motion to suppress the evidence

derived from the wiretap as the fruit of illegal surveillance, arguing that the government had failed

to show why electronic surveillance was necessary.  The district court denied this motion, and the

case proceeded to trial.

The jury found Wolcott guilty on all counts.  The district court calculated Wolcott's

sentencing range under the United States Sentencing Guidelines ("U.S.S.G.") as 262–327 months

of imprisonment.  This range included a 240-month mandatory-minimum sentence for the drug

charge based on the district court's finding that Wolcott had a previous felony drug conviction, *see*

---

[1]Kevin Wolcott is Joseph Wolcott's son.  All references to "Wolcott" in this opinion are to Joseph Wolcott.

[2]The charges against Wolcott consisted of conspiracy to distribute and possession with intent to distribute over 1,000 kilograms of marijuana, traveling in interstate commerce to distribute the proceeds of an unlawful activity, conducting an illegal gambling business, conspiracy to commit money laundering, and sponsoring and exhibiting an animal in an animal fighting venture.

21 U.S.C. § 841(b)(1)(A), and a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) based on Wolcott's role as an organizer or leader of the drug-trafficking operation. After considering the government's request for a 300-month sentence, the court sentenced Wolcott to 240 months of imprisonment for the drug conviction and 36 months of imprisonment for the money-laundering, gambling, and animal-fighting convictions, with the sentences running consecutively for a total of 276 months of imprisonment.[3] The court also imposed ten years of supervised release.

Wolcott timely appealed, arguing that the district court erred in denying his motion to suppress and in imposing the 276-month sentence. As to the sentence, Wolcott argues that the district court should not have imposed the mandatory minimum because the government did not prove beyond a reasonable doubt that he had a prior felony drug conviction and that his Sixth Amendment rights were violated when the court, rather than a jury, found that he had such a conviction. In addition, Wolcott argues that the four-level leadership-role enhancement was improper. Finally, Wolcott contends that the sentence was procedurally and substantively unreasonable because the district court did not explain its reasons for selecting 276 months or for ordering that the 240-month mandatory minimum and the additional 36 months run consecutively.

## II. ANALYSIS

---

[3]The transcript of the sentencing hearing reports the district judge as stating, "there will be 36 months on those four counts that will run concurrent" but then immediately thereafter stating, "for a total sentence of 276 months." R.854 at 50 (Page ID# 4075). Neither party asked for clarification. It is thus unclear whether the judge misspoke or if "concurrent" is a typographical error. The judgment states that the sentences will run consecutively, and Wolcott does not contend that the district court actually imposed concurrent sentences.

## A. Necessity of the Wiretap

Wolcott argues that the district court should have suppressed all evidence derived from the three wiretaps because the government's initial affidavit requesting wiretap authority failed to meet the "necessity requirement" of 18 U.S.C. § 2518. When evaluating a district court's denial of a motion to suppress evidence derived from a wiretap, we review findings of fact for clear error and questions of law de novo. *United States v. Rice*, 478 F.3d 704, 709 (6th Cir. 2007) (citing *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002)). We generally "'accord great deference to the determinations of the issuing judge.'" *Id.* (quoting *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000)). Because "suppression is the appropriate remedy for a violation under Title III," the government cannot use evidence at trial that was discovered by means of a wiretap that fails to satisfy the necessity requirement. *Id.* at 710.

Under § 2518, a law-enforcement official's application for wiretap authority must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The necessity requirement ensures that a wiretap is not used as "the 'initial step in [a] criminal investigation,'" *Rice*, 478 F.3d at 710 (quoting *United States v. Giordano*, 416 U.S. 505, 515 (1974)), or is otherwise "'resorted to in situations where traditional investigative techniques would suffice to expose the crime,'" *id.* (quoting *United States v. Alfano*, 838 F.2d 158, 163 (6th Cir. 1988)). Accordingly, the application must demonstrate that the government gave "'serious consideration to the non-wiretap techniques prior to applying for wiretap authority'" and

explain why, under the particular circumstances at hand, such techniques would be, or had already proven to be, inadequate. *Stewart*, 306 F.3d at 305 (quoting *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985)). Nonetheless, the government "need not prove the impossibility of other means of obtaining information," and, relatedly, "the mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance." *Id.*

Wolcott chiefly contends that the wiretap was unnecessary because the government was already enjoying significant investigatory success through the use of a confidential informant. As described above, the DEA affidavit detailed how CS-12 had purchased marijuana from Ferguson on multiple occasions, discussed further drug activity with Ferguson and Copas, and attended at least one invitation-only cockfight which Copas and Wolcott also attended. Wolcott identifies CS-12's interactions with Copas, whom the affidavit describes as one of the leaders of the operation, as evidence that CS-12 had access to higher-ups and thus that the wiretap was not needed to achieve the government's objectives. In particular, Wolcott points to Copas's invitation for CS-12 to stay at Copas's house and see his chickens and marijuana as an opportunity for CS-12 to advance within the operation's hierarchy and to learn more about its mechanics and scope.

Continued reliance on CS-12 might have led the government to more of the big-picture information it sought, but the government also offers persuasive reasons why such an approach would have been inadequate. CS-12's primary interaction with Ferguson was in the role of buyer, which the affidavit explained was unsustainable due to the steep price Ferguson charged for

marijuana. Moreover, Ferguson was a relatively low-level participant in the operation and thus may not have had much information to share.

The interactions between CS-12 and Copas likewise carried limitations. As with his interactions with Ferguson, CS-12's opportunity for continued participation in the operation appears to have been limited to the role of buyer. Even Copas's invitation, upon which Wolcott heavily relies, was for CS-12 to "come and stay at [Copas's] residence sometime so that Jeffery Copas could show CS-12 some chickens and different grades/types of marijuana." R.522-2 at 29, ¶ 60 (Page ID# 1649). Copas did not invite CS-12 to take on a leadership role in the operation or even, as Wolcott characterizes it in his appellate brief, to learn about the operation's objectives. Moreover, not all opportunities for an informant's advancement within the target operation render a wiretap unnecessary. In *United States v. Woods*, 544 F.2d 242, 257 (6th Cir. 1976), we affirmed the use of wiretap evidence even though a government informant had the opportunity to become a lieutenant in the targeted crime organization. "[E]ven as a lieutenant," we reasoned, "[the informant] would have had difficulty in learning all the complex details of the widespread organization, and its aiders and abettors." *Id.* The same difficulty would seem to apply here.[4]

The affidavit also describes the other non-wiretap techniques that the officers had employed or considered employing, including pen registers and physical surveillance, as well as the likely inadequacy of other techniques, such as search warrants or witness interviews. Wolcott makes no

---

[4]Wolcott correctly notes that, upon the government's advice, the informant in *Woods* declined the opportunity to serve as a lieutenant. *See* 544 F.2d at 257. Our decision that the wiretap satisfied the necessity requirement did not depend on this fact, however.

8

sustained effort to challenge the affidavit's description of the inadequacy of these other techniques. Apart from his arguments regarding the use of confidential informants, the sole element of the affidavit he attacks is the contention that physical surveillance would have been significantly difficult. The affidavit adequately explains why, under the specific circumstances of this investigation, physical surveillance would not likely have been successful. First, law enforcement had been unable to identify the residences of some of the operation's suspected leaders, including Wolcott. Other potential targets, including Copas, lived in rural areas with minimal traffic where attempts at surveillance would be easily noticed.

We make one closing observation. In wiretap cases, the government often relies on the argument that a conspiracy of any significant size necessitates wiretap authority because traditional investigatory tools are unlikely to infiltrate such an operation to a sufficient height and breadth to reveal the full extent of its reach. *See, e.g.*, *United States v. Washington*, 112 F. App'x 501, 504 (6th Cir. 2004) (unpublished opinion); *Stewart*, 306 F.3d at 305; *Woods*, 544 F.2d at 257 n.11. Suspicions of a conspiracy that extends beyond a few identifiable individuals will not always warrant the authorization of wiretap authority. However, the government has adequately shown the necessity of such authority under the circumstances presented in this case. The district court did not err in denying Wolcott's motion to suppress.

## B. Sentencing

Wolcott appeals his sentence of 276 months of imprisonment on three grounds: (1) the district court erroneously applied a mandatory-minimum sentence based on the finding that Wolcott

had a prior felony drug conviction; (2) the court improperly enhanced his offense level for having a leadership role in the criminal activity; and (3) the sentence was procedurally and substantively unreasonable. In the sentencing context, we review a district court's factual findings for clear error and its legal determinations de novo. *United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002). We generally review the reasonableness of the sentence itself for an abuse of discretion. *United States v. Harmon*, 607 F.3d 233, 236 (6th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). When a party fails to object to an aspect of the sentence before the district court, however, we review for plain error. *Id.*

### 1. Mandatory Minimum

Wolcott puts forth two reasons why the district court erred in determining that he was subject to a mandatory-minimum sentence of 240 months of imprisonment for the drug crime. First, Wolcott argues that his Sixth Amendment rights were violated when the court, rather than a jury, found that he had a prior felony drug conviction that triggered the mandatory minimum. Second, he contends that the government did not prove beyond a reasonable doubt that he had such a conviction.

#### a. Sixth Amendment

Wolcott argues that his Sixth Amendment right to a trial by jury was violated when the district court, rather than a jury, made the factual finding that Wolcott had a prior felony drug conviction, a finding that enhanced his sentence. However, Wolcott concedes that the Supreme Court has held that judicial fact-finding regarding the existence of a prior conviction does not violate

the Sixth Amendment. *See Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998); *United States v. Martin*, 526 F.3d 926, 941 (6th Cir. 2008). "[T]he continued viability of *Almendarez-Torres* is not for this Court to decide," but must await an authoritative pronouncement from the Supreme Court. *Martin*, 526 F.3d at 942.

### b. Proof of a Prior Felony Drug Conviction

A defendant who commits certain drug crimes faces a mandatory-minimum sentence of 240 months of imprisonment if he has a prior conviction for a felony drug offense. 21 U.S.C. § 841(b)(1)(A). Prior to Wolcott's trial, the government filed an information pursuant to 21 U.S.C. § 851 alleging that Wolcott was convicted in Tennessee state court in 1987 of the felony drug offense of selling marijuana. As proof of the prior conviction, the government presented a copy of the judgment against a Joseph M. Wolcott from the Criminal Court of Cumberland County. At the sentencing hearing, DEA Agent Billy Joe Mundy testified that the name, date of birth, and Social Security number listed on the state-court judgment matched the information on Wolcott's 2008 driver's license. In addition, Agent Mundy testified that he was involved in the investigation that led to the 1987 conviction, even though he was not personally involved in the case itself, and that he recognized Wolcott from that investigation.

Wolcott argues that the government's evidence was insufficient to prove beyond a reasonable doubt that he was the same Joseph Wolcott who was convicted of selling marijuana in Cumberland

11

County in 1987.[5]  Wolcott insists that the government must present more compelling evidence of identity, such as contemporaneous fingerprint records or a mug shot.

We have not yet had occasion to determine the nature of the government's burden in establishing that a defendant was the person who committed the prior crime that would trigger the statutory enhancement of 21 U.S.C. § 841(b)(1)(A).  None of our sister circuits has held that fingerprint records from the prior conviction are required.  Wolcott cites Fourth and Tenth Circuit cases in which the court noted the absence of such records in holding that the government had failed to meet its burden, but in both cases the other identifying information which the government offered did not directly match the defendant.  *See United States v. Kellam*, 568 F.3d 125, 144–45 (4th Cir. 2009) (inconsistent spelling of names); *United States v. Green*, 175 F.3d 822, 834–36 (10th Cir. 1999) (different name, year of birth, and address).  Other courts have held that fingerprint records or photographs are not always required.  *See United States v. Gonzalez*, 625 F.3d 824, 827 (5th Cir. 2010); *United States v. Okafor*, 285 F.3d 842, 848 (9th Cir. 2002).

We need not articulate a general rule as to when, if ever, the government must present such identifying evidence in order to match a defendant to the perpetrator of a prior crime.  In this case, the district court did not err in determining, based on the matching name, date of birth, and Social Security number, that the Joseph Wolcott who sold marijuana to an undercover officer in

---

[5]For purposes of the enhancement, the government must prove any issue of fact related to the prior conviction beyond a reasonable doubt.  21 U.S.C. § 851(c)(1).

Cumberland County in 1987 was the same Joseph Wolcott who stood before the court awaiting

sentencing in 2011.

### 2. Leadership-Role Enhancement

U.S.S.G. § 3B1.1 provides for (a) a four-level enhancement in the offense level "[i]f the

defendant was an organizer or leader of a criminal activity that involved five or more participants

or was otherwise extensive," (b) a three-level enhancement if the defendant was a manager or

supervisor of such an activity, and (c) a two-level enhancement if the defendant was "an organizer,

leader, manager, or supervisor in any criminal activity other than described in (a) or (b)." U.S.S.G.

§ 3B1.1. The applicability of § 3B1.1 thus has two elements: (1) "the size of a criminal

organization," and (2) "the degree of the defendant's responsibility." *Id.* cmt. background.

The operation in this case clearly involved five or more criminally responsible participants;

indeed, the government indicted twelve other individuals at the same time as Wolcott. Wolcott does

not contend otherwise, but focuses on his role in the operation. Accordingly, the first element for

applicability of § 3B1.1 is satisfied.

Wolcott does not dispute that he served in a leadership role with regards to Danny Brown,

a co-defendant who pleaded guilty, but characterizes his role with respect to any other players in the

operation as that of a buyer or seller without any degree of control. *See United States v. Schultz*, 14

F.3d 1093, 1099 (6th Cir. 1994) ("[M]ere buying and selling, without other evidence, is not

sufficient to show that a defendant is a leader, organizer, manager, or supervisor."). As we have

interpreted § 3B1.1, however, a leadership role as to one other participant is enough. We have held

that "[i]t is not necessary . . . for a defendant to have led or directed five individuals to receive this sentencing enhancement." *United States v. Owusu*, 199 F.3d 329, 347 (6th Cir. 2000). Instead, § 3B1.1(a) "may apply '[i]f the defendant organized or led at least one participant, and if the activity involved five or more people or was otherwise extensive.'" *Id.* (quoting *United States v. Ward*, 68 F.3d 146, 151 (6th Cir. 1995)); *see also* U.S.S.G. § 3B1.1 cmt. n.2 (2010) ("To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."). The evidence shows that Wolcott instructed Brown to store marijuana at Wolcott's farmhouse (where Brown lived), make deliveries to customers at the time and place arranged by Wolcott, and maintain a ledger accounting for all sales. Wolcott paid Brown for his services. Based on these facts, the district court appropriately concluded that Wolcott "'organized or led at least one participant.'" *Owusu*, 199 F.3d at 347 (quoting *Ward*, 68 F.3d at 151).

Because the government satisfied both elements for a four-level enhancement under § 3B1.1(a) based on Wolcott's leadership role in the criminal activity, the district court did not err in applying the enhancement.

### 3. Procedural and Substantive Reasonableness

Finally, Wolcott argues that the 276-month sentence was procedurally and substantively unreasonable because the district court failed adequately to explain its reasons for the sentence or to consider the 18 U.S.C. § 3553(a) sentencing factors. Wolcott makes this argument as to both the general reasonableness of the sentence and the decision that the 36-month sentence for the money-

laundering, gambling, and animal-fighting convictions would run consecutively with the mandatory minimum 240-month sentence for the drug conviction.

Wolcott did not raise these objections before the district court, even after the court asked at the conclusion of the sentencing hearing whether either party had any substantive or procedural objections. Accordingly, we review the adequacy of the district court's explanation of its reasons for the sentence for plain error. *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004).[6] Under this standard, we will reverse the district court only if the defendant shows "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted).

When imposing a sentence, the district court must consider the § 3553(a) sentencing factors and any non-frivolous arguments for leniency raised by the defendant, and the court must adequately explain the reasons for the sentence. *See Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the

---

[6]Normally, substantive-reasonableness challenges need not be raised before the district court and thus do not face plain-error review on appeal. *United States v. Massey*, 663 F.3d 852, 857 (6th Cir. 2011) (citing *United States v. Vonner*, 516 F.3d 382, 389, 391–92 (6th Cir. 2008) (en banc)). However, Wolcott's substantive-reasonableness claim is based on the district court's failure to explain its reasons for the sentence or to consider the § 3553(a) factors, which is subject to plain-error review if not raised before the district court. *Vonner*, 516 F.3d at 386, 390. With respect to a defendant's challenge to the adequacy of a district court's explanation, "'the procedural and substantive components of our reasonableness inquiry appear to overlap.'" *United States v. Ross*, 375 F. App'x 502, 508 (6th Cir. 2010) (unpublished opinion) (quoting *United States v. Herrera-Zuniga*, 571 F.3d 568, 579 (6th Cir. 2009)).

parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."). Likewise, when exercising its discretion whether multiple terms of imprisonment will run consecutively or concurrently, the court "shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b). A district court abuses its discretion when it "fails to 'make generally clear the rationale under which it has imposed the consecutive sentence.'" *Ross*, 375 F. App'x at 506 (quoting *United States v. Johnson*, 553 F.3d 990, 998 (6th Cir. 2009)).

At sentencing, Wolcott's primary arguments for leniency were his age and poor health. The district court addressed and, to an extent, agreed with these arguments at the sentencing hearing; indeed, the court rejected the government's preferred sentence of 300 months due to the court's concern with Wolcott's health. Wolcott argues on appeal that even a sentence of 276 months is inconsistent with the district court's expressed concern with imposing a de facto life sentence. Although Wolcott may have wanted the district court to show even greater leniency based on his age and health, the court's decision not to do so does not render the sentence unreasonable.

In addition to addressing Wolcott's arguments for leniency, the district court considered several § 3553(a) factors, albeit in a somewhat limited fashion. The court calculated the Guidelines range and considered what sentences were statutorily available for each offense. In addition to the mandatory-minimum sentence of twenty years for drug trafficking, the gambling and animal-fighting offenses each carried up to five years in prison and the money-laundering offense carried up to twenty years in prison. The court's rulings on the sentencing enhancement and the mandatory-

minimum sentence show that the court clearly knew that Wolcott occupied a leadership role in the criminal operation and had a criminal history. Finally, the court stated that the length of the sentence might allow for some hope that Wolcott would be released within his lifetime.

The seriousness of the crimes and Wolcott's role in committing them also supports having the sentences run consecutively. Although the district court did not engage in an explicit discussion of the consecutive/concurrent issue, we have held that a sentencing court need not always conduct a separate § 3553(a) analysis as to the consecutive/concurrent issue if it does so as to the length of each sentence and the context makes clear that the same analysis applies to both issues. *United States v. Berry*, 565 F.3d 332, 343 (6th Cir. 2009). Here, the court announced that the sentences would run consecutively immediately after announcing the length of each sentence. *Cf. Ross*, 375 F. App'x at 507 (describing the district court's discussion of the § 3553(a) factors, which came after the court's ruling that the sentences would run consecutively, as "divorced" from the concurrent/consecutive issue).

Wolcott argues that the fact that he committed multiple crimes is not by itself sufficient to justify consecutive sentences. The district court's emphasis on the need for the sentence to account for Wolcott's numerous crimes was not limited to the fact that he committed other crimes, however, but also considered the seriousness of those crimes, each of which carried the potential for multiple-year terms of imprisonment on its own. Accordingly, Wolcott has not shown that the district court's explanation of its sentence was plain error.

## III. CONCLUSION

Because the government has adequately shown the necessity of wiretap authority under the circumstances presented in this case, we AFFIRM the district court's denial of Wolcott's motion to suppress evidence gathered as the result of electronic surveillance. We likewise AFFIRM Wolcott's sentence of 276 months of imprisonment.