NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0512n.06

**No. 12-5131**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*May 22, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellee, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| v. | ) | |
| | ) | |
| BILLY E. NICHOLS, SR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  ROGERS, WHITE, and ALARCÓN[*], Circuit Judges.

   **HELENE N. WHITE, Circuit Judge.**  Defendant-Appellant Billy Nichols, Sr. (Nichols) pled guilty of receipt of child pornography, 18 U.S.C. § 2252A(a)(2)(A), and possession of child pornography and morphed child pornography, 18 U.S.C. § 2252A(a)(5)(B).  After a jury trial Nichols was also convicted of production of child pornography, 18 U.S.C. § 2251.  On appeal, Nichols challenges several aspects of his trial and his 600-month sentence.  We AFFIRM.

**I.**

   Beginning in January 2009, Nichols and his wife began living with his son B.J., his son's long-time girlfriend, their minor son, and their minor daughter, the victim.  At the time Nichols and his wife moved in with B.J. and his family, the victim was seven years old.  In April 2009, the victim

---

[*]The Honorable Arthur L. Alarcón, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

told her mother that Nichols had taken naked photographs of her. After searching the home, the mother found several disks of child pornography, including naked photographs of the victim, in a duffel bag in Nichols's closet. The duffel bag also held a lock box that contained vibrators. The mother testified that when Nichols found out that she had discovered the duffel bag "[h]e asked me why I stole his belongings and for me to bring his belongings back to him, and he would explain—you know, sit down and go through everything with me . . . [and not to] turn any of it over to the police." The mother contacted the police.

Investigators seized a desktop computer, an external hard drive, a laptop computer, and 60 compact disks from the Nichols' home. An electronic forensic analyst examined the computers, the external hard drive and the disks, and identified approximately 3000 images and 111 videos of minors, including prepubescent minors, engaged in sexually-explicit activity. Forensic analysis revealed that the computers contained 36 images of the victim in various states of undress, and the seized disks contained 27 additional similar images of the victim.

Nichols was indicted for receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A); possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B); possession of morphed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B); and production of child pornography in violation of 18 U.S.C. § 2251. Nichols pleaded guilty to the receipt and possession charges, and proceeded to trial and was convicted of the production charge. The Presentence Investigation Report (PSR) calculated a guidelines sentence of 840 months,[1] to

_____

[1]As the PSR explains, the statutorily-authorized maximum sentence of 840 months is less than the minimum of the applicable guideline range of life. In such a case, the statutorily authorized

which neither party objected. After statements from both government and defense witnesses, the district court considered the nature and circumstances of the offense, Nichols's history and characteristics, including his age and health, and Nichols's lack of remorse. Based on these factors, the court sentenced Nichols below the guidelines to 600 months of imprisonment and ten years of supervised released. The court also awarded restitution to the victim and two additional individuals whose photographs appeared in Nichols's child pornography collection.

## II.

Nichols first challenges the sufficiency of the evidence, arguing that the images of the victim do not depict "sexually explicit conduct" as required by statute, 18 U.S.C. § 2251(a). Because Nichols's counsel failed to renew his motion for acquittal at the close of evidence, our review of this claim is limited "to determining whether there has been a 'manifest miscarriage of justice.'" *United States v. Damra*, 621 F.3d 474, 494 (6th Cir. 2010) (citation omitted). "Under this standard, we only reverse a conviction if the record is devoid of evidence pointing to guilt." *Id.* (citation and internal quotation marks omitted).

The statutory definition of "sexually explicit conduct" includes the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). This court uses a six-factor test to assess lasciviousness:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

---

maximum sentence "shall be the guideline sentence." *See* U.S.S.G. § 5G1.1(a).

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)). "[T]his list is not exhaustive, and an image need not satisfy every factor to be deemed lascivious." *Id.* (citations and internal quotation marks omitted).

Nichols argues that the images are not lascivious because the only applicable factor is that the victim is partially clothed. We disagree. The focus of several of the images is the victim's pubic area, either while she is in her underwear or fully naked. The photographs were taken in a bedroom, including several images taken while the victim was lying in a bed—a place that is generally associated with sexual activity. *See United States v. Ogden*, No. 06-20033, 2008 WL 2247074 (W.D. Tenn. May 28, 2008); *United States v. Overton*, 573 F.3d 679, 687 (9th Cir. 2009). In many of the photographs the victim is posed in a sexually-suggestive manner. *See United States v. Campbell*, 81 F. App'x 532, 536–37 (6th Cir. 2003). And, as Nichols acknowledges, the victim is nude or partially clothed in several of the photographs.

Regarding the fully naked images of the victim while she appears to be asleep, which include close-up images of the victim's vagina and pubic area, Nichols contends that "[a]rguably, pictures

of a sleeping child cannot be sexually suggestive, suggest sexual coyness, or [be] designed to elicit a sexual response from the viewer." Nichols provides no support for this assertion. Other courts have upheld a finding of lasciviousness where the victim is nude and asleep, *see, e.g., United States v. Wolf,* 890 F.2d 241 (10th Cir. 1989), and we see no reason why such a finding should depend on the victim's state of consciousness.

Nichols further argues that the evidence does not establish his identity as the photographer beyond a reasonable doubt. He notes that multiple persons had access to the computers; that the victim was asleep in the fully-naked photographs and thus could not know who took the photographs; and that the victim discussed her testimony with her mother prior to testifying at trial. However, the victim testified that Nichols took pictures of her without her clothes on "a lot," and told her that "it was okay for him to be taking those kinds of pictures[.]" Some of the photographs at issue involved the victim *awake* and partially clothed in sexual poses. The photographs of the victim at issue were not located on the shared computer, but rather on a disk recovered from a duffel bag in Nichols's closet. And, the mother testified that Nichols told her that the disks containing the photographs were "his belongings," and asked her not to "turn any of it over to the police." Accordingly, Nichols's sufficiency challenge fails.

## III.

Nichols contests the substantive reasonableness of his 600-month sentence, arguing that the court failed to give sufficient weight to his age and health. We review a district court's sentencing

decision for substantive reasonableness under an abuse-of-discretion standard.[2]  *United States v.*

*Jones*, 641 F.3d 706, 711 (6th Cir. 2011).  A sentence may be considered substantively unreasonable

when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors,

fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any

pertinent factor.  *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005).

     Nichols's argument fails.  The court expressly acknowledged and considered Nichols's age

(63 years old) and health issues (high blood pressure, cholesterol, some skin cancer, and a heart

condition with bypass surgery) when determining Nichols's sentence.  Additionally, we accord a

presumption of reasonableness to within-guidelines sentences, *United States v. Vonner*, 516 F.3d

382, 389 (6th Cir. 2008) (en banc), and that presumption is at least as strong where a defendant, like

Nichols, receives a below-guidelines sentence, *United States v. Curry*, 536 F.3d 571, 573 (6th Cir.

2008).  Nichols's contention that his age and health deserve greater weight does not overcome this

presumption of reasonableness.  *See United States v. Wolcott*, 483 F. App'x 980, 989 (6th Cir. 2012)

("Although [defendant] may have wanted the district court to show even greater leniency based on

---

[2]The government argues that this court should review the substantive reasonableness of Nichols's sentence for plain error because he did not object to the sentence below.  However, "[a] litigant has no duty to object to the 'reasonableness' of the length of a sentence . . . *during* a sentencing hearing, just a duty to explain the grounds for leniency.  That is because reasonableness is the standard of *appellate* review, not the standard a district court uses in imposing a sentence." *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc) (emphasis in original); *see United States v. Massey*, 663 F.3d 852, 857 (6th Cir. 2011) ("Unlike objections to the procedural reasonableness of a sentence, the defendant need not object to the substantive reasonableness of a sentence in the district court in order to preserve the issue for appeal.").  Defense counsel argued at sentencing that Nichols's age and health were cause for leniency.  Thus, Nichols was not obligated to object to the reasonableness of the sentence at the conclusion of the sentencing.

his age and health, the court's decision not to do so does not render the sentence unreasonable.").

The court adequately considered the § 3553 factors, including the factors of age and physical

condition, and imposed a substantively reasonable sentence.

Nichols also argues that to the extent the sentencing guidelines instruct the court to give

"lesser weight" to a defendant's age in determining an appropriate sentence,[3] they violate "equal

protection under the Due Process Clause of the Fifth Amendment." Nichols cites no case law in

support of his implied contention that age must be given equal weight with all other factors. Further,

the applicable guideline does not, as Nichols contends, direct that a sentencing court give old age

"lesser weight" in sentencing, but rather that a sentencing court must identify "exceptional"

circumstances to grant a downward departure on this basis. *See United States v. Bostic*, 371 F.3d

865, 875 (6th Cir. 2004). Age is not always a relevant factor that must be "heavily considered," as

Nichols advocates. Here, the district court considered Nichols's age and health conditions. Nichols

has failed to show that the sentencing guidelines violate his right to due process or equal protection.

**IV.**

---

[3]Sentencing Guideline § 5H1.1 provides that:

Age (including youth) may be relevant in determining whether a departure is
warranted, if considerations based on age, individually or in combination with other
offender characteristics, are present to an unusual degree and distinguish the case
from the typical cases covered by the guidelines. Age may be a reason to depart
downward in a case in which the defendant is elderly and infirm and where a form
of punishment such as home confinement might be equally efficient as and less costly
than incarceration.

Next, Nichols challenges his sentence as "cruel and unusual" under the Eighth Amendment.

Constitutional challenges to a sentence present questions of law that are reviewed *de novo*. *United*

*States v. Jones*, 569 F.3d 569, 573 (6th Cir. 2009) (citation omitted). The Eighth Amendment

forbids "extreme sentences that are grossly disproportionate to the crime." *Harmelin v. Michigan*,

501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); *see United States v. Layne*, 324 F.3d 464, 473

(6th Cir. 2003) (citation omitted). We review Nichols's sentence using a "narrow proportionality

principle," which "does not require strict proportionality between crime and sentence." *Harmelin*,

501 U.S. at 997, 1001 (Kennedy, J., concurring) (citing *Solem v. Helm*, 463 U.S. 277, 288 (1983)).

Rather, "only an extreme disparity between crime and sentence offends the Eighth Amendment."

*United States v. Moore*, 643 F.3d 451, 454 (6th Cir. 2011) (citations and quotation marks omitted).

Nichols attempts to show the disproportionality of his sentence by distinguishing his case

from *United States v. Hughes*, 632 F.3d 956 (6th Cir. 2011). In *Hughes*, this court rejected a

defendant's proportionality challenge to his mandatory sentence of ten years for attempting to

persuade, induce, or entice a minor to engage in sexual activity. *Id.* at 959–60. Nichols argues that

this case is distinguishable from *Hughes* (apparently implying that such a distinction renders his

sentence disproportionate) because the crime at issue in *Hughes* was "serious and involved attempted

sexual relations with a minor," whereas in his case, "no evidence was produced that [he] sexually

molested the minor." Apart from the fact that the government introduced evidence at the sentencing

phase supporting that Nichols *did* sexually abuse the victim, the evidence further shows that Nichols

took pornographic photographs of the victim on multiple occasions and continued to exhibit a lack

of remorse throughout the trial. We have "consistently noted the seriousness of crimes involving

the sexual exploitation of minors." *Hughes*, 632 F.3d at 959 (citation omitted). Nichols has not met the heavy burden of showing that his below-guidelines 600-month sentence is grossly disproportionate.[4]

## V.

Based on the foregoing reasoning, we AFFIRM Nichols's conviction and 600-month sentence.

---

[4]Nichols, who was 64 when sentenced, also complains that because of his age and health problems his 600-month sentence is the equivalent of life in prison. However, "[t]he Supreme Court has never held that a sentence to a specific term of years, even if it might turn out to be more than the reasonable life expectancy of the defendant, constitutes cruel and unusual punishment." *United States v. Beverly*, 369 F.3d 516, 537 (6th Cir. 2004).